UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DARLINTA COOK GARRISON                    CIVIL ACTION

VERSUS                                     NO. 19-13008

MICHAEL TREGRE                            SECTION "R" (5)

**ORDER AND REASONS**

Before the Court is defendant Sheriff Michael Tregre's motion for summary judgment.[1] Plaintiff Darlinta Cook Garrison opposes the motion.[2] For the following reasons, the Court grants the motion.

**I.   BACKGROUND**

This case involves claims of employment discrimination. Plaintiff Darlinta Cook Garrison began working for the St. John the Baptist Parish Sheriff's Office in November 2009.[3] At the time of her termination, she was working as a D.A.R.E. instructor and grant writer.[4] Plaintiff alleges that, on April 2, 2018, she requested leave, to begin the same day, and to run through

---

1       R. Doc. 36.
2       R. Doc. 39.
3       R. Doc. 1 ¶ 7.
4       *Id.* ¶ 8.

April 6, 2018.[5] Despite her same-day request, plaintiff represents that she had planned on taking this leave "[a] few days before" because the school where she teaches D.A.R.E. was closed that week, and she "needed rest."[6] On the morning of April 2, plaintiff's supervisor approved her request.[7] However, that evening, plaintiff received a call from the Sheriff Office's Human Resources Director, Troy Cassioppi, informing plaintiff that her leave had been revoked by defendant Sheriff Tregre, and that she was "to report to work to backfill for the switchboard."[8] Defendant testified that he revoked plaintiff's leave because multiple people had submitted advanced vacation requests for that week, which created a staff shortage, and that he "needed[] people to attend [to] other day-to-day operations at the sheriff's office."[9] He also noted that plaintiff had not complied with the office's 30-day advance-notice policy for employees seeking non-emergency leave, although he conceded that there are circumstances where employees would give fewer than 30 days' notice and still have their requests approved.[10]

---

5   *Id.* ¶ 10.
6   R. Doc. 36-4 at 10 (Garrison Deposition at 25:3-7).
7   R. Doc. 1 ¶ 9.
8   *Id.* ¶¶ 11-12.
9   R. Doc. 36-4 at 20 (Tregre Deposition at 18:18-25).
10  *Id.* at 8:6-25.

Despite the revocation of her leave, plaintiff did not report to work on April 3. That day, plaintiff's supervisor sent her an email stating that, if she had another unauthorized absence that week, it would result in "additional disciplinary actions for failure to obey direct instructions."[11] Despite this warning, plaintiff did not report to work on April 4 or 5.[12]

On April 5, 2018, plaintiff was discharged for "insubordination, refusal to work [the] switchboard, and failure to report for duty."[13] After her termination, plaintiff filed a charge of race and sex discrimination with the Equal Employment Opportunity Commission.[14] Plaintiff received a right-to-sue letter on September 11, 2019.[15]

On October 7, 2019, plaintiff filed a complaint in this Court alleging that defendant unlawfully terminated her on the basis of her sex and race in violation of Title VII of the Civil Rights Act of 1964, as amended.[16] In her complaint, plaintiff contends that the reason given for her termination was a pretext for discrimination, and that defendant "habitually subjects black female employees under his command to worse treatment in comparison to

---

[11]   *Id.* at 20:21-21:22.
[12]   *Id.* at 20:3-24.
[13]   R. Doc. 1 ¶¶ 14-15.
[14]   *Id.* ¶ 6.
[15]   *Id.*
[16]   R. Doc. 1.

3

their black male, white male, and white female counterparts."[17] Defendant now moves for summary judgment.[18] The Court considers the parties' arguments below.

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting

---

[17] *Id.* ¶¶ 19-20.
[18] R. Doc. 36.

4

10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by

submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

## III. DISCUSSION

Title VII of the 1964 Civil Rights Act provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The plaintiff in a Title VII action bears the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish a *prima facie* case of discrimination under the *McDonnell Douglas* burden-shifting framework, "an employee must demonstrate that she '(1) is a member of a protected group; (2) was qualified

6

for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.'" *Morris v. Town of Independent*, 827 F.3d 396, 400 (5th Cir. 2016) (quoting *Willis v. Cleco Corp.*, 749 F.3d 314, 319-20 (5th Cir. 2014)).

Once a plaintiff has established a *prima facie* case of discrimination, the "burden shifts to the employer to produce a legitimate, nondiscriminatory reason for her termination." *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). If an employer produces a legitimate, non-discriminatory reason for termination, the burden then shifts back to the plaintiff, who must produce "substantial evidence that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Id.* Even if pretext is shown, it may be insufficient to establish discrimination "when the record conclusively reveals some other, nondiscriminatory reason for the employer's decision," or "when the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue, and there was abundant and uncontroverted evidence that no discrimination occurred." *Id.*

7

Whether judgment as a matter of law is appropriate ultimately turns on "the strength of the plaintiff's prima face case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Id.* at 579 (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)).

Defendant contends that plaintiff cannot establish a *prima facie* case for sex or race discrimination, and that, even if Garrison has established a *prima facie* case, she cannot establish that defendant's stated reason for her termination was pretextual.[19] In response, plaintiff asserts that she has established a *prima facie* case of discrimination because (1) as a black female, she is a member of a protected group; (2) there is no dispute that she was qualified for the position; (3) she was discharged; and (4) she was treated less favorably than other similarly situated employees outside of her protected group who were not ordered to work at the switchboard.[20]

Defendant does not challenge that Garrison has met her burden as to the first two elements of the *prima facie* case. However, defendant contends that Garrison has not satisfied the third and fourth elements because she

---

[19] R. Doc. 36-1 at 10-13.
[20] R. Doc. 39 at 5-6.

8

cannot show that she (1) suffered an "adverse employment decision," or (2) that she was treated "less favorably than a similarly situated individual."[21] The Court addresses each argument in turn.

To satisfy the third prong of her *prima facie* claim, Garrison must establish that she suffered an "adverse employment action." For Title VII discrimination claims, only "ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensation" are considered "adverse employment actions." *McCoy v. City of Shreveport*, 492 F.3d 551, 559-60 (5th Cir. 2007) (per curiam). Here, it is undisputed that plaintiff was discharged from St. John the Baptist Parish Sheriff's Office.[22] But, defendant points out that plaintiff testified at her deposition that she was not terminated because of her race. In her deposition, plaintiff testified as follows:

> Q: And that . . . you're alleging that the true reason you were fired by the sheriff was because you're an African-American female; is that correct? Is that what you're alleging?
>
> A: *No.*
>
> . . . . .
>
> Q: You admit that[] it was insubordinate to not show up on April 3rd, 4th, and 5th, correct?

---

[21] R. Doc. 36-1 at 9-10.
[22] R. Doc. 36-2 ¶ 1; R. Doc. 39-1.

9

A. Correct.

Q: I mean, you would admit that's against policy, correct?

A: Correct.

Q: And you would admit that it subjected you to discipline, correct?

A: Correct.

Q: [W]hat facts are you alleging [that] would prove that you were discriminated against?

A. Because my vacation was denied, stating that I needed to work the switchboard, where there were others who were there who were available to work the switchboard. It just so happened to be that those two were white. *So I wasn't stating that he fired me because I was black, or African American.*

Q. Okay. So let me clarify that, then. Are you not claiming that your termination was[] an act of discrimination?

A. *The treatment towards me was.*

Q. And the treatment towards you that you're referring to is making you work the switchboard, when other white employees could work the switchboard and they were available and they weren't on vacation?

A. Correct.[23]

Based on plaintiff's deposition testimony, the Court finds that Garrison has admitted that she was not terminated because of her race. Instead, plaintiff testified that defendant discriminated against her as a black female employee by denying her vacation request and assigning her to work at the

---

[23] R. Doc. 36-4 at 13 (Garrison Deposition at 27:1-28:24) (emphasis added).

10

switchboard. Although termination is an "adverse employment action," *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282-83 (5th Cir. 2004), plaintiff is foreclosed from prevailing on that claim. This follows because plaintiff bears the ultimate burden of showing that she was terminated because of her race, when, as here, the employer produces evidence of a legitimate non-discriminatory reason for the termination. *Laxton*, 333 F.3d at 578. Both plaintiff's and defendant's deposition testimony,[24] together with Garrison's termination letter, citing "insubordination" and "fail[ure] to report to duty on April 3rd, 4th, and 5th,"[25] constitute evidence of a legitimate non-discriminatory reason for Garrison's termination.

The Court must now determine whether the revocation of plaintiff's leave request and her switchboard assignment rise to the level of "adverse employment actions." Under Fifth Circuit precedent, "[a] single denial of leave is not an adverse employment action when it affects leave on a specific

---

[24] *See, e.g.*, R. Doc. 36-4 at 12 (Garrison Deposition at 27:17-23 ("Q. . . . You admit that[] it was insubordinate not to show up on April 3rd, 4th, and 5th, correct? A. Correct."); R. Doc. 36-4 at 23-24 (Tregre Deposition at 22:8-23:6) (testifying that he terminated plaintiff after her request for vacation was denied because "[Tregre] did not hear from her on Tuesday, April 3rd, and attempts were made to contact her. Also, there was a traffic detail that Ms. Garrison was assigned to work on the morning of April 4th . . . [that] she failed to report for . . . which put the officer at risk and the public at risk").

[25] R. Doc. 36-4 at 11 (Garrison Deposition at 26:3-19).

11

date and time." *McElroy v. PHM Corp.*, 622 F. App'x 388, 391 & n.4 (5th Cir. 2015) (per curiam) (quoting *Ogden v. Potter*, 397 F. App'x 938, 939 (5th Cir. 2010) (per curiam)); *see also Morris v. Baton Rouge City Constable's Off.*, 299 F. Supp. 3d 773, 785 (M.D. La. 2018) ("[T]he Court concludes that the denial of [plaintiff's] two day[-]leave request before Christmas does not amount to an adverse employment action."). Although the denial of an employee's leave may rise to an "adverse employment action" if it impacts the employee's "amount of or right to take leave in general," *Ogden*, 397 F. App'x at 939, plaintiff here has not alleged that defendant had a pattern of denying her requests for leave, or that she had less leave than other similarly situated employees. Accordingly, the denial of plaintiff's leave for April 2-6, 2018 was not an "adverse employment action."

Similarly, the Court finds that plaintiff has failed to demonstrate how her assignment to the office's switchboard for April 2-6, 2018 constitutes an "adverse employment action." An employment decision that "does not affect job duties, compensation, or benefits" is not considered an "adverse employment action" for purposes of making out a *prima facie* case of Title VII discrimination. *Pegram*, 361 F.3d at 282. Here, plaintiff does not represent that being assigned to work at the switchboard affected her "job duties, compensation, or benefits." *Id.* To the contrary, plaintiff was asked

12

to work at the switchboard during a week when she did not have her regular job duties as a D.A.R.E. instructor because the schools were closed.[26] There is no suggestion that plaintiff would be required to work at the switchboard once school was back in session, or that it would in any way impact her job duties as a D.A.R.E. instructor and grant writer.

Accordingly, plaintiff has not raised a genuine dispute that the denial of her vacation request and her assignment to work at the switchboard during an understaffed week were "adverse employment actions."

Even assuming *arguendo* that plaintiff has shown an "adverse employment action," the Court finds that plaintiff has failed to make a *prima facie* showing on the fourth prong of her Title VII claim. To meet the fourth prong of plaintiff's *prima facie* case, she must show either that she was replaced by someone outside of her protected group, or that she was treated less favorably than other similarly situated employees outside of her protected group. *McCoy*, 492 F.3d at 556. Plaintiff offers no evidence to indicate that she was replaced by someone of a different race or sex. Plaintiff instead alleges that she was treated less favorably than two white female

---

[26] *Id.* at 10 (Garrison Deposition at 25:3-22).

employees, and one white male employee, who were not assigned to work at the switchboard during the week in question.[27]

To meet the "similarly situated employee" requirement, a plaintiff must "identify at least one coworker outside of [her] protected class who was treated more favorably 'under nearly identical circumstances.'" *Alkawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017) (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)). The employment actions being compared will be considered to have occurred "under nearly identical circumstances" if the employees being compared hold the same job or job responsibilities, share the same supervisor, and have "essentially comparable violation histories." *Lee*, 574 F.3d at 259-60. "And critically, plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Id.* Nevertheless, the Fifth Circuit has made clear that "nearly identical" does not mean "identical." *See Alkawaldeh*, 851 F.3d at 427 n.10 ("Lest there be any doubt, the Title VII comparator must be similarly situated—not identical.").

---

[27] R. Doc. 1 ¶¶ 16-17.

Here, plaintiff identifies three individuals, Danielle Falgoust, Bernadette Daley, and James Nolan, who, plaintiff asserts, were treated more favorably than she. Plaintiff argues as follows:

> Defendant revoked [plaintiff's] leave request after it had been approved. Defendant, Sheriff Tregre, alleges that [plaintiff's] revocation was due to a personnel shortage. However, the shortage was caused by Sheriff Tregre's single handed decision to allow a white female, Danielle Falgoust, to attend a training course to advance her career. The position Defendant required to be filled had been specifically assigned to Ms. Falgoust. Nonetheless, Defendant permitted Ms. Falgoust to attend CPR training on that day, thereby creating a personnel shortage. Defendant then revoked the black employee's (Darlinta Garrison's) leave request and required the black employee to be at work to fill in for the white employee (Danielle Falgoust) so that the white employee could go to training . . . . Additionally, two other white employees [Bernadette Daley, a white female, and James Nolan, a white male] were not on leave and available to fill in for Ms. Falgoust, yet Sheriff Tregre saw fit to force Ms. Garrison out of her leave to return to work.[28]

The Court does not find that Falgoust, Daley, or Nolan were "similarly situated" to plaintiff, nor were they treated more favorably than plaintiff "under nearly identical circumstances." *See Lee*, 574 F.3d at 259. As an initial matter, plaintiff worked in the public affairs office and reported to Major Clarence Gray, whereas Daley and Nolan both worked in the civil department and were supervised by the Chief Civil Deputy, Jeff Clement.[29]

---

[28]   R. Doc. 39-1 at 1-2.
[29]   R. Doc. 39-4 at 5, 11; R. Doc. 39-3 (Tregre Deposition at 11:1-12:4).

15

*See id.* at 259-60 (holding that employees "who work for different divisions of a company . . . with different supervisors," or "who have different work responsibilities . . . are not similarly situated"); *see also Saketkoo v. Tulane Univ. Sch. of Med.*, 510 F. Supp. 3d 376, 389 (E.D. La. 2020) (rejecting plaintiff's purported comparators because plaintiff "offered the Court no explanation as to why these individuals, despite their disparate job titles and presumably different responsibilities, are appropriate comparators"). And although plaintiff represents that Daley and Nolan "worked in the department where the *switchboard was located*,"[30] she provides no evidence that either employee was qualified or available[31] to work at the switchboard. Additionally, the Court notes that plaintiff has provided no evidence that Daley or Nolan, like plaintiff, failed to show up on dates that they were scheduled to work. *See id.* ("If the difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts* for the difference in treatment received from the employer, the employees are not similarly situated."). The Court thus finds that Daley and Nolan's employment records

---

30  R. Doc. 39 at 2 (emphasis added).
31  To the contrary, the employee leave chart attached to plaintiff's opposition shows that Daley was not in the office on April 2, 2018. R. Doc. 39-4.

are not sufficiently similar to Garrison's to satisfy the fourth element of her *prima facie* case.

Unlike Daley and Nolan, plaintiff was employed in a similar position as Falgoust. Both Garrison and Falgoust were D.A.R.E. instructors, worked in the public relations unit, and, as defendant testified, "[t]hey both did the same job functions and they were both ranking officers . . . I think they were pretty much equal."[32] But plaintiff cannot show that Falgoust had a comparable violation history. As noted by defendant, "there is obviously a substantial difference between allowing a law enforcement employee to become C.P.R. certified and allowing another to take a few vacation days during a short-staffed week."[33]

The Court finds that plaintiff's choice not to show up for her shift at the switchboard after the denial of her vacation request, was not "nearly identical" to Falgoust's being away from the switchboard because she received approval to attend a C.P.R. class. *See Alkawaldeh*, 851 F.3d at 426. Plaintiff argues several times in her opposition that she was subject to discrimination because defendant "chose to advance his white employee's career to the detriment of Plaintiff, the black employee."[34] But there is no

---

[32] R. Doc. 39-3 (Tregre Deposition at 20:13-17).
[33] R. Doc. 43 at 5.
[34] R. Doc. 39-1 at 2.

17

evidence that defendant chose to advance Falgoust's career *over* plaintiff's career.  For instance, defendant did not assign plaintiff to the switchboard instead of permitting her to attend a class that would further her career. Instead, defendant testified that, based on his knowledge that Falgoust wanted to become a C.P.R. instructor, he "reassigned her" from the switchboard to the C.P.R. class.[35]  Plaintiff, unlike Falgoust, testified that she requested leave because she needed rest, not because she wanted to take a class that would advance her career.[36]  The Court therefore finds that "the striking differences between" Garrison's and Falgoust's situations "more than account for the different treatment they received."  *Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 305 (5th Cir. 2000).

Finally, plaintiff provides a chart that details her coworkers' requests for time off, their reason for the request, and whether it was approved.[37] Plaintiff highlights the following employees as possible comparators to her request for time off: Denise Bertrand, Bernadette Daley, Vada Lennix, Stacey Marie Millet, and James Nolan.[38]  While the records show that some employees have been permitted leave despite not adhering to the 30-day-

---

[35]   R. Doc. 36-4 at 21 (Tregre Deposition at 19:1-11; 20:25-21:2).
[36]   *Id.* at 10 (Garrison Deposition at 25:3-7).
[37]   R. Doc. 39-3.
[38]   *Id.*

18

notice policy, a fact defendant concedes,[39] the records do not show any other employee who asked for five days of non-emergency vacation time, without notice, during the week following a holiday, when the office was allegedly short-staffed. While several employees, such as Lennix, Millet, and Nolan, requested time off without the 30 days' notice, they are not comparable to plaintiff because they did not request off April 2-6, 2018, a time during which defendant represents the office was short staffed.[40] And as for employees who were approved for time off during the week of April 2-6, 2018, they either requested it in advance, like Daley, or had an emergency reason for the request, such as being sick like Bertrand.[41] Moreover, none of these employees, unlike plaintiff, requested leave for the entire week of April 2 through 6, 2018.[42]

The Court also notes that two black female employees, Lennix and Millet, are not appropriate comparators because they are not outside of plaintiff's protected group. *See Alkhawaldeh,* 851 F.3d at 427 ("It is well-established that a Title VII claimant can only prove disparate treatment by presenting evidence that he was treated less favorably than others *outside of*

---

[39] R. Doc. 43 at 4 n.8 (noting that defendant's position "is not and has never been that the leave policy is firmly rigid").
[40] R. Doc. 39-4.
[41] *Id.*
[42] *Id.*

19

*his protected class.*"). The Court therefore finds that none of these employees is an appropriate comparator. Thus, Garrison cannot establish the fourth prong of her *prima facie* case, defendant is entitled to summary judgment. *See id.* at 426.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED. Plaintiff's complaint is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this __21st__ day of December, 2021.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE